UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| - v. - | |
| RAMSES OWENS,<br>    a/k/a "Ramses Owens Saad,"<br>DIRK BRAUER,<br>RICHARD GAFFEY,<br>    a/k/a "Dick Gaffey," and<br>HARALD JOACHIM VON DER GOLTZ<br>    a/k/a "H.J. von der Goltz,"<br>    a/k/a "Johan von der Goltz," | 18 Cr. 693 (RMB) |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

DEBORAH CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division

Eun Young Choi
Thane Rehn
Assistant United States Attorneys

Michael Parker
Parker Tobin
Trial Attorneys, Criminal Division, United States Department of Justice

    - Of Counsel -

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

I.  THE DEFENDANTS ARE NOT ENTITLED TO EARLY IDENTIFICATION OF TRIAL EXHIBITS ............................................................................................................. 5

    A.  Applicable Law ........................................................................................................ 6

    B.  Discussion ................................................................................................................ 7

II.  THE DEFENDANTS ARE NOT ENTITLED TO THE SEARCH TERMS USED TO REVIEW SEIZED DOCUMENTS ..................................................................................... 10

    A.  Applicable Law ...................................................................................................... 11

    B.  Discussion .............................................................................................................. 12

CONCLUSION ................................................................................................................... 14

## INTRODUCTION

Defendants Richard Gaffey and Harald Joachim von der Goltz move for an order requiring the Government to provide early identification of trial exhibits drawn from documents the Government obtained from a search warrant executed at the accounting firm at which Gaffey was a partner (the "Accounting Firm") and from third parties that the Government intends to rely upon in its case-in-chief, and to provide the search terms used as part of the process of reviewing materials obtained pursuant to the search warrant. (*See* Dkt. Nos. 74-78).[1] Those requests should be denied. The Government has already offered to produce a draft trial exhibit list six weeks prior to trial, a timeline that is consistent with the timeline in comparable cases in this district. The Government's offer is more than sufficient to comply with its discovery obligations, and there is no basis for compelling production of trial exhibits months in advance of trial, as sought by the defendants here. There is also no basis in precedent or the Federal Rules to require the Government to produce the search terms used to review seized materials, which would be irrelevant to the defendants' contemplated suppression motion.

Much of the defendants' motion is devoted to raising purported flaws in the Government's disclosures to date in this case. As detailed below, the Government has taken steps to address those concerns, several of which were never raised by the defense prior to filing this motion. If anything, the motion's detailed recitation of minor issues in the discovery materials reveals that defense counsel is fully familiar with the facts of this case and more than capable of reviewing the discovery, and there is no need for the extraordinary relief sought by the defense. At bottom, the only real basis articulated by the defense for seeking early identification of trial exhibits and

---

[1] "Mem." refers to the Defendants' Memorandum in Support of their Motion to Compel Early Production of Trial Exhibits. (Dkt. No. 75).

production of search terms is the volume of discovery in this case. That is not a basis for the requested relief, particularly here where the Government has prepared a lengthy and detailed indictment, produced detailed cover letters accompanying its document production that create an index of discovery, produced a large amount of early 3500 material and accompanying exhibits, and regularly responded to defense inquiries by providing additional information. In cases with similarly voluminous discovery, courts have repeatedly upheld a schedule for the production of trial exhibits in line with the Government's proposal.

## BACKGROUND

The underlying facts of the case are set forth in the Government's Opposition to the Defendants' Motion for a Bill of Particulars. (*See* Dkt. No. 73). The Indictment alleges a scheme to conceal Harald Joachim von der Goltz's assets and income from the IRS by hiding them in a set of offshore entities (the "Revack Entities") nominally owned by an offshore foundation, the Revack Holding Foundation. The defendants are von der Goltz and Richard Gaffey, who served as von der Goltz's accountant and conspired with von der Goltz to conceal the assets.

The detailed Indictment sets out the nature and circumstances of the charged conduct and the defendants' roles, and provides specific reference to documents and statements, such as the organizing documents for the Revack Trust and the Revack Holdings Foundation, which held the Revack Entitites. (*See, e.g.,* Indictment ¶¶ 37-42). The Indictment also provides dates for particular communications and actions and quotes from relevant documents and correspondence (*See, e.g.,* Indictment ¶¶ 42-47, 51-59, 104(a), 111), permitting the defendants to readily identify materials relied on by the grand jury in returning the Indictment. In addition, at the defendants' request, the Government has produced witness statements, from both grand jury testimony and agent reports of witness interviews, relating to the ownership of the entities at issue in the case,

2

and has specifically identified all the documents used during these witnesses' testimony and interviews, a total of more than 100 exhibits of particular importance to the case.

The Government has also produced a large amount of discovery in this case, and has taken multiple steps to make the discovery readily accessible and reviewable for the defense. First, although the overarching investigation relating to the Mossack Fonseca law firm is sprawling, the Government has gone to significant lengths to identify and produce only the materials that are relevant to these particular defendants. This is far from the "document dump" described in the defense motion. Second, the discovery is all text-searchable and has been produced with metadata where available, and the Government has provided an extensive index which organizes the documents by their source, enabling the defendants to focus on those documents most relevant to their defenses.

The largest volume of discovery in this case—approximately 80% of the total page count—consists of documents obtained from a search of the Accounting Firm, which was conducted pursuant to a search warrant. The Government has also produced subpoena returns from banks and various other entities, as well as documents obtained from foreign governments pursuant to Mutual Legal Assistance Treaties (MLATs) and Tax Information Exchange Agreements (TIEAs).[2]

The defendants' motion raises a number of issues with the discovery that have little bearing on the requested relief, including some which were already resolved at the time the motion was

---

[2] The defense has asked the Government for the MLAT and TIEA requests to foreign governments, but has not moved to compel the production of those requests, which are covered by doctrines of diplomatic confidentiality and law enforcement and work product protections. The Government has put the defense on notice that it intends to rely on the MLAT and TIEA documents at trial.

3

filed, and others which had not been raised by the defense with the Government before the motion was filed.  For instance:

- The motion notes repeatedly that a small number of documents over which the defense asserts attorney-client privilege were inadvertently produced as part of the discovery available to the investigative team. (Mem. at 5, 7).  However, the Government had already clawed back those documents before the motion was filed, as soon as this issue was raised by the defense.  The investigative team was unaware that these documents were in the discovery and never relied on these documents.

- The motion takes issue with a single missing document from the IRS file of "Client-1"—the Offshore Voluntary Disclosure Program ("OVDP") application for Client-1—and also notes that the Government's production included 12 pages pertaining to a Kentucky taxpayer unconnected to the investigation. (Mem. at 6).  The defense had not raised either issue with the Government prior to filing the motion, and the Government has since clawed back the Kentucky taxpayer information and will produce certain documents relating to Client-1's OVDP application (documents that in the ordinary course would be produced with 3500 materials, but the Government will produce early in light of the defendants' requests).  Notably, the defense's ability to identify individual documents in the production as either missing or apparently unrelated to the case belies their claims that they are unable to effectively review the discovery.

- The motion asserts that documents produced included PDFs for which there was no metadata, which make them difficult to search. (Mem. at 4).  The Government notes that its productions of documents is text searchable, and that it produced to the defense documents it received from third parties in the form that the Government received

4

      them, including all metadata provided by those third parties related to those documents. Further, the Government is endeavoring to provide additional metadata that may assist the defendants in their review of the search warrant returns from the Accounting Firm, and will produce them to the defense shortly.

- The motion takes issue with the production of documents from Credit Suisse and the British Virgin Islands. (Mem. at 5). The defense had not raised this issue with the Government before filing the motion, and the Government has since met and conferred with the defense on these issues and provided the defense with additional information to address these questions. Of note, the Government has requested Bates ranges of documents for particular topics from counsel for Credit Suisse, and will be providing those ranges to the defense shortly.

The Government has repeatedly informed the defendants that it will endeavor to answer their questions about specific documents and productions, and is available for any such inquiries so as to obviate the need for unnecessary motions practice.

## ARGUMENT

**I. THE DEFENDANTS ARE NOT ENTITLED TO EARLY IDENTIFICATION OF TRIAL EXHIBITS**

The first relief sought by the defense is to compel the Government to identify the exhibits it intends to use at trial. The Government has offered to produce a draft exhibit list six weeks in advance of trial, and has also identified a large number of particular documents of interest both by referencing them in the Indictment and by producing the exhibits to the various witness statements that it has produced. The Government's production already far exceeds what the law requires, and

requiring the production of a full exhibit list at this stage of the process is unwarranted.

### A.      Applicable Law

Under Federal Rule of Criminal Procedure 16(a)(1)(E), upon a defendant's request the Government must produce documents and objects within its custody or control if (i) they are material to preparing the defense, (ii) the Government intends to use them during its case-in-chief at trial, or (iii) if they were obtained from or belong to the defendant. Because there is "no such requirement … in the plain language of the Rule," some courts have held that the Government cannot be required to make an early identification of trial exhibits. *United States v. Nachamie*, 91 F.Supp.2d 565, 570 (S.D.N.Y. 2000). Other courts have held that it is within the court's authority to produce trial exhibits, relying on "a district court's inherent authority to regulate the nature and timing of discovery." *United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004).

When district courts have ordered an early production of trial exhibits, they have generally ordered production shortly before the trial date to "ensure an efficient presentation at trial." *Id.* For instance, in *Giffen*, the court ordered the Government to identify its trial exhibits 30 days before trial, while also explaining that the Government "may supplement its exhibit list at any time, including during trial, in good faith." *Id.* Other cases have adopted similar timelines for early disclosure of trial exhibits when the case has unusually complex or voluminous discovery. *See United States v. Chalmers*, 474 F. Supp. 2d 555, 573 (S.D.N.Y. 2007) (requiring disclosure of preliminary trial exhibit list 30 days before trial); *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356 at *20 (S.D.N.Y. Jan. 2, 2001) (15 days before trial).

Federal Rule of Criminal Procedure 12(b)(4)(B) provides that a defendant may, "[i]n order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may

be entitled to discover under Rule 16." This rule "is a procedural device intended to facilitate efficient pre-trial motion practice," and it does not "require the Government to 'preview' its case." *United States v. Conyers*, No. 15 Cr. 537 (VEC), 2016 WL 7189850, at *10 (S.D.N.Y. Dec. 9, 2016). Because the purpose of the rule is to inform the defendant about whether to file a suppression motion, the rule is satisfied when the Government provides notice that it intends to rely on evidence obtained from a particular search. "Notice from the Government that it intends to rely on some or all of the evidence gleaned from a search warrant would adequately inform the defense that a motion is worth making—identification of specific evidence is unneeded." *Id.*

**B.     Discussion**

The defense motion primarily argues that early identification of trial exhibits is needed to aid the defense in preparation for trial, and relies heavily on the volume of discovery as the basis for this request. To that extent, the defense motion is essentially in the nature of a request for a bill of particulars and should be denied for the reasons articulated in the Government's opposition to the motion for a bill of particulars. (Dkt. No. 73). As detailed there, the Government has provided the defense with ample information to adequately prepare for trial, and the defendants' motion for a bill of particulars represents "an impermissible attempt to compel the Government to provide the evidentiary details of its case." *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (internal citation omitted). Because the law does not permit a defendant to obtain the evidentiary details of the Government's case by way of a bill of particulars, it would make no sense to permit the defendant to pursue the same impermissible purpose by simultaneously moving to compel early identification of the Government's trial exhibits.[3]

---

[3] Additionally, to the extent that the defense needs more time to review the discovery, the appropriate remedy would be a continuance rather than early production of trial exhibits. This is

7

Courts in this district have repeatedly declined to order early identification of trial exhibits this far in advance of trial. The Government's offer to produce a draft exhibit list six weeks in advance of trial meets or exceeds the usual practice and is more than sufficient to "ensure an efficient presentation at trial." *Giffen*, 379 F. Supp. 2d at 344; *see id.* (ordering identification of trial exhibits 30 days before trial); *Chalmers*, 474 F. Supp. 2d at 573 (30 days before trial); *Lino*, 2001 WL 8356 at *20 (15 days before trial).[4] The only recent case imposing a longer timeline than six weeks in this district appears to be *United States v. Vilar*, 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008), which ordered production of an exhibit list 60 days before trial. In *Vilar*, however, the defendants had already prevailed on a motion to suppress evidence seized pursuant to a search warrant. *Id.* at 620-21. The Court recognized that there would be litigation on a document-by-document basis regarding whether particular Government exhibits were tainted fruits of the unlawful search, and thus ordered identification of these exhibits 60 days in advance of trial. *Id.* at 640.[5] There is no such circumstance here.

---

the approach used by courts when there is a delay in discovery. *See, e.g., United States* v. *Pineros*, 532 F.2d 868, 871 (2d Cir. 1976) (the court should consider, inter alia, "'the feasibility of rectifying [any] prejudice by a continuance'" (quoting Advisory Committee Notes on Rule 16(g)); *United States* v. *Graham*, No. 99 Cr. 271 (CFD), 2000 WL 1902425, at *2 (D. Conn. Dec. 21, 2000) ("A continuance is the least severe remedy necessary to preserve the defendant's right to a fair trial, promote the fair and efficient administration of justice, and ensure full compliance with Rule 16(a).").

[4] These cases are consistent with the view expressed by the Court at the May 29 status conference in this case that the defendant's motion for trial exhibits "seems a little early." Tr. 3-4 (May 29, 2019).

[5] The defense also cites two cases from the Eastern District: *United States v. McDonald*, 2002 WL 2022215, at *3 (E.D.N.Y. 2002), which ordered identification of trial exhibits eight weeks before trial, without explanation; and *United States v. Upton*, 856 F.Supp. 727, 748 (E.D.N.Y. 1994), which ordered identification of trial exhibits without reference to the trial date. The *Upton* case is an outlier, involving a 60-count indictment against a large number of defendants that had already been pending for nearly four years at the time of the court's order. More recent case law in the Eastern District indicates that identification of trial exhibits closer to trial is the norm there, as it is here. *See, e.g., United States v. Barrett*, 153 F. Supp. 3d 552, 575 (E.D.N.Y. 2015) (denying

The defense motion also cites Rule 12(b)(4)(B), as a basis for ordering the identification of trial exhibits. However, the purpose of Rule 12(b)(4)(B) is to give the defense sufficient information to determine whether to file a motion to suppress, not to "require the Government to 'preview' its case." *Conyers*, 2016 WL 7189850, at *10. Here, the Government has put the defense on notice that it intends to rely on documents obtained as a result of the search, and has produced all such seized materials, which fully satisfies the requirement of the rule. *Id.*; *see also United States v. Ishak*, 277 F.R.D. 156, 158-59 (E.D. Va. 2011) ("[D]efendants cannot invoke Rule 12(b)(4)(B) 'to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using any that it does not so designate as a matter of trial tactics.'") (quoting *United States v. El-Silimy*, 228 F.R.D. 52, 57 (D. Maine 2005); *United States v. Lujan*, 530 F.Supp.2d 1224, 1246 (D.N.M. 2008) ("The purpose of the rule is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions.").

The defense motion on this point relies entirely on *United States v. Anderson*, 416 F.Supp.2d 110 (D.D.C. 2006), the only cited case in which a court ordered the Government to identify trial exhibits pursuant to Rule 12(b)(4)(B). As subsequent cases have recognized, the reasoning of *Anderson* is "unpersuasive; it ignores the Rule's text, purpose, and proper relationship to Rule 16." *Ishak*, 277 F.R.D. at 159 n.2. The purpose of the rule is to "provide the defendant with sufficient information to file the necessary suppression motions," *Lujan*, 530 F.Supp.2d at 1246, and interpreting it to require production of a full exhibit list goes far beyond that purpose. "Had the rule contemplated a detailed exhibit list, it could have stated so expressly." *Id.*

---

defense request for trial exhibits 60 days before trial and directing both parties to exchange exhibit lists 45 days before trial).

9

The defendants' motion seeking identification of trial exhibits should be denied.

## II. THE DEFENDANTS ARE NOT ENTITLED TO THE SEARCH TERMS USED TO REVIEW SEIZED DOCUMENTS

On August 4, 2017, a magistrate judge sitting in the United States District Court for the District of Massachusetts issued a search warrant for the premises of the Accounting Firm, and agents executed the search of the premises shortly thereafter. As part of the search, agents identified three computers likely to contain responsive material—the Accounting Firm's server, and the computers used by Gaffey and his assistant—and created full digital copies, or "images," of the contents of those computers on site without removing the devices. The Government then used search terms to identify documents responsive to the search warrant on these devices.[6] Following that process, the Government ran a new set of "attorney search terms" through the documents that had been identified as responsive using the first set of search terms, to identify any documents that were subject to a claim of potential privilege. A filter team of attorneys reviewed that set of documents to identify potentially privileged documents. Any documents identified as potentially privileged were not released to the investigative team, but have been produced to Gaffey along with the other electronic documents identified pursuant to the search terms.[7]

In addition to producing the documents found to be responsive through this process, the

---

[6] The search warrant allowed for law enforcement to use "various techniques to locate information responsive to the warrant, including, for example: . . . . performing key word searches through all electronic storage areas," and expressly "authorized [law enforcement personnel] to conduct a complete review of all the ESI from seized devices if necessary to evaluate its contents and to locate all data responsive to the warrant." (Def. Buehler Decl. Ex. 5 at 33 (Dkt. No. 76-5) (search warrant application and order)). The Second Circuit has previously approved this District's practice in reviewing ESI as set forth in its warrant language, including but not limited to use of "key word searches through all electronic storage areas" as well as allowing for file-by-file review. *See United States v. Ulbricht*, 858 F.3d 71, 101-02 (2d Cir. 2017).

[7] The Government has not produced potentially privileged documents to von der Goltz, as those documents may be subject to a claim of privilege by other parties. The Government has only

Accounting Firm retained the original devices after the execution of the warrant, so the whole universe of documents against which the search terms were run was available to Gaffey. The defendants' motion seeks an order compelling the Government to produce the search terms and attorney search terms used by the Government in this review process, arguing that the search terms are relevant to the determination whether to file a motion to suppress.

### A.    Applicable Law

The Warrants Clause of the Fourth Amendment requires that search warrants must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant is sufficiently particular if it "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). "The Fourth Amendment does not require a perfect description of the data to be searched and seized," however, and "[s]earch warrants covering digital data may contain 'some ambiguity. . . .'" *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (quoting *United States v. Galpin*, 720 F.3d at 446).

"[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979). For searches authorizing the seizure of electronically stored information, "the Fourth Amendment does not require a search warrant to specify computer search methodology." *United States v. Bowen*, 689 F. Supp. 2d 675, 681 (S.D.N.Y. 2010). Accordingly, courts "reviewing challenges to searches of electronically stored information have declined to

---

produced such documents to Gaffey as a person who had access to them prior to the search warrant execution through his employ at the Accounting Firm. Aside from potentially privileged documents, the Government has produced all responsive documents from the search to von der Goltz.

11

require any particular protocols such as the use of specific search terms or methodologies." *United States v. Lebovits*, No. 11 Cr. 134, 2012 WL 10181099, at *22 (E.D.N.Y. Nov. 30, 2012)).

Because the Fourth Amendment does not require particular search protocols or search terms, courts have declined to order the production of search terms in discovery. *United States v. Fumo*, No. 06 Cr. 319, 2007 WL 3232112, at *5 (E.D. Pa. Oct. 30, 2007) (denying defense motion to compel production of search terms because "search protocols and keywords used by the government are irrelevant to the decision whether the warrants were overbroad or the seizures exceeded the scope of the warrants"); *United States v. Jack*, No. 07 Cr. 266, 2009 WL 453051 (E.D. Cal. Feb. 23, 2009) (denying defense motion to compel production of search terms and holding that such terms "are not material to the preparation of the defense").

**B.     Discussion**

Here, the defense is considering a motion to suppress evidence seized pursuant to the search warrant, and argues that the search terms would aid in that decision. That argument is a non sequitur. The defendant is in possession of the search warrant and the materials seized pursuant to that warrant. Any motion to suppress would be based on those materials, and the specific search terms used to assist the Government in identifying the seized materials are not necessary for the defendants to file any such motion.

As noted, at least three courts have denied similar motions and have rejected the same arguments made by the defense here. *See Fumo*, 2007 WL 3232112, at *5 (E.D. Pa. Oct. 30, 2007); *Jack*, 2009 WL 453051 (E.D. Cal. Feb. 23, 2009); *United States v. Brown*, No. 12 Cr. 367, 2013 WL 5508676, at *7 (E.D. Pa. Oct. 4, 2013). The sole case cited by the defense in which a court ordered the production of search terms is *United States v. Cadden*, No. 14 Cr. 10363, 2015 WL 5737144 (D. Mass. Sept. 30, 2015). However, *Cadden* is inapposite. In *Cadden*, the defense

argued that the Government's production of documents from a search warrant had been under-inclusive, the opposite of the defendants' argument here. *See Cadden*, 2015 WL 13683814, at *5 (explaining defense argument that the search terms were needed to determine whether there might be relevant documents that were "inadvertently omitted from the government's production"). In granting the defense motion, the court cited only cases about civil discovery and had no occasion to consider whether search terms might be relevant to a motion to suppress a warrant. *Cadden*, 2015 WL 5737144 at *3 & n.4.

The defense also cites the transcript of the suppression hearing in *United States v. Wey*, No. 15 Cr. 611 (AJN), showing that the Government introduced a list of search terms during agent testimony at that hearing. (Mem. at 18). However, the court's decision in *Wey* expressly stated that it was not relying on the content of search terms. *United States v. Wey*, 256 F. Supp. 3d 355, 407 (S.D.N.Y. 2017). The court instead based its ruling on the Government's decision to conduct new searches of the seized electronic information for new categories of information long after the initial search had been conducted, an issue not present here. *Id.* at 408.

The defense has not cited any case in which a court has ordered the production of search terms in discovery based on reasoning that such terms would be relevant to a motion to suppress. Nor is there anything so unusual about this case that would warrant the unprecedented relief sought by the defense. The defense makes a cursory argument that the discovery contains some irrelevant documents, citing a small sample of documents reviewed by a paralegal. (Mem. at 8-9). Although the Government does not accept the selective data offered by the defense, there is nothing unusual about some imprecisions in a review of voluminous computer data. "[I]t has been recognized that seizure of superfluous computer files is virtually inevitable." *United States v. Maali*, 346 F. Supp. 2d 1226, 1265 (M.D. Fla. 2004).

13

To the extent the defense seeks to challenge the search or seizure on the basis of such alleged overbreadth of the evidence seized, any such challenge would be based on the warrant and the actual evidence recovered. This was the conclusion of the court in *Fumo*, which explained that "search protocols and keywords used by the government are irrelevant to the decision whether … the seizures exceeded the scope of the warrants. . . . [T]he constitutionality … of the seizures of particular documents can be determined by examining only the warrants and the evidence." 2007 WL 3232112, at *5. There is no basis for ordering production of the search terms.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendants' motion in its entirety.

Dated: New York, New York
       June 5, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

DEBORAH CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division

By: /s/ Thane Rehn
Eun Young Choi
Thane Rehn
Assistant United States Attorneys

Michael Parker
Parker Tobin
Trial Attorneys, Criminal Division