


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 7, 2019

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **Government's Opposition to Defendant's Letter Motion to Exclude Evidence**

Dear Judge Berman:

    The Government respectfully submits this response opposing the Letter Motion submitted by defendant Ramses Owens (the "defendant" or "Owens"), by and through counsel, on May 28, 2019 (the "Letter") and accompanying Affidavit of Marcela Arauz Quintero, Esq. ("Quintero Aff."), and amended on May 30, 2019 (the "Amended Letter"). (*See* Dkt. Nos. 94, 95). In the Letter Motion, Owens appears to move this Court to suppress evidence that he claims was improperly obtained by foreign law enforcement authorities. (Am. Ltr. at 6). In support of this claim, Owens argues that foreign law enforcement authorities are "acting as the agent of the U.S. Attorney's Office for the Southern District of New York" by allegedly seizing bank accounts held in a Panamanian bank on behalf of U.S. authorities and allegedly seizing records from the mobile device of the defendant. (*Id.* at 3-4).[1]

    For the following reasons, the Government respectfully submits that this Court should deny the defendant's motion pursuant to the fugitive disentitlement doctrine. If the Court decides the issues raised on the merits, the Court should deny Owens's request for suppression of materials that may have been gathered by a mutual legal assistance treaty ("MLAT") request.

---

[1] The Government does not concede the facts as set forth in Owens's Letter Motion, Quintero Affidavit, or Amended Letter, including but not limited to (i) whether U.S. authorities have requested assistance from Panamanian law enforcement as set forth in the Amended Letter, or (ii) the description of the means by which any seizure of funds or electronic evidence was effectuated. To the extent that the Court does not dismiss this motion for the reasons set forth herein, the Government hereby reserves its rights to dispute the factual allegations as set forth in the Amended Letter.

## BACKGROUND

### A. The Charges Against Owens

On December 4, 2018, this Court unsealed an eleven-count indictment (the "Indictment"), naming Owens in five counts. (Dkt. No. 7). Count One charges Owens (and another) with participating in a conspiracy to defraud the United States by concealing clients' assets and investments, and the income generated by those assets and investments, from the IRS, in violation of Title 18, United States Code, Section 371. Count Two charges Owens (and another) with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. Count Three charges Owens (and others) with conspiracy to commit tax evasion, in violation of Title 18, United States Code, Section 371. Count Four charges Owens (and others) with wire fraud and aiding and abetting, in violation of Title 18, United States Code, Sections 1343 and 2. Count Five charges Owens (and others) with participating in a conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). These charges allege that while working at Mossack Fonseca and at the Owens Firm, Owens assisted clients, including U.S. taxpayer clients such as co-defendant H.J. von der Goltz, in evading their United States tax obligations and concealing their assets. (*See e.g.*, Indictment ¶¶ 28, 44, 46, 49, 70).

### B. Procedural History and Communications with Owens's Counsel

Defendant Ramses Owens has neither been arraigned nor made an initial appearance in this District. *See* Fed. R. Crim. P. 5, 10. However, on December 12, 2018—a mere week after charges were publicly announced against Owens—counsel for the defendant filed their notice of appearance in this case. (Dkt. No. 10 & 11).

Since that time, the Government has engaged in several conversations with Owens's counsel regarding the defendant's willingness to travel to the U.S. and face his pending charges. In spite of the defendant's current representation that his absence from these proceedings is "involuntary," (*see* Dkt No. 95 at 1), at no point has counsel for Owens—over the course of the past five months—ever indicated that their client would be willing to travel to the United States for the purpose of facing the charges currently pending against him. In fact, the Government has offered to Owens's counsel, if Owens was willing to face the U.S. charges, to communicate with the Panamanian authorities to facilitate Owens's ability to travel to the United States for that purpose. Despite these attempts by the Government to find a way for Owens to travel here to resolve the pending charges against him, Owens—through his counsel—has affirmatively expressed his unwillingness to travel to this District for that purpose. In light of these facts, the Government continues to view Owens as a fugitive from justice.

Regarding the alleged seizure of Panamanian bank accounts by foreign government agents, on or about April 1, 2019, Owens's counsel called a member of the prosecution team, during which counsel asked whether the Government, working with the Panamanian authorities, had attempted to "levy" certain bank accounts held by a Panamanian Bank. Counsel further requested that if the Government had in fact attempted such an action, the Government should provide the U.S. judicial order granting such authority. After being asked whether Owens had an ownership interest in the accounts in question, counsel stated that Owens was a trustee of the accounts in question, and that he had a fiduciary duty regarding those accounts. When asked who had the ownership interest in

the accounts in question, and to whom that fiduciary duty might lie, counsel stated that a Guatemalan citizen and resident, referred to as "the Mother" in the Indictment, was the owner. (*See e.g.*, Indictment ¶ 36).  On April 2, 2019, the Government sent an email to Owens's counsel which stated, among other things, that the Government would not confirm any pending actions in Panama.  The Government further set forth its position that, as a general matter, if Owens had no ownership interest in a given asset, he was not legally entitled to notice if the Government took an action against that asset, and invited counsel to provide any legal authority suggesting otherwise.  To date, the Government has received no reply from the defendant regarding the purportedly seized assets.[2]  Moreover, prior to the filing of the Amended Letter, Owens never communicated to the Government concerning the alleged "data and . . . communication records acquired from [his] mobile device."  (Am. Ltr. at 4).

## ARGUMENT

### I. THE DEFENDANT'S MOTION SHOULD BE DENIED UNDER THE FUGITIVE DISENTITLEMENT DOCTRINE

At the outset, the defendant's letter motion should be denied under the fugitive disentitlement doctrine.  Since the unsealing of the Indictment, the defendant has failed to face the charges against him in the United States.  The fugitive disentitlement doctrine vests this Court with the discretion to consider a motion or application by a fugitive defendant.  The Court should decline to hear the defendant's motion as he continues to evade the charges against him and remains a fugitive.

#### A. Applicable Law

The fugitive disentitlement doctrine vests a court with discretion to refuse to grant relief to a fugitive who flees from justice.  *See United States v. Mann*, No. S4 00 CR. 632 (WHP), 2003 WL 1213288, at *1 (S.D.N.Y. Mar. 17, 2003); *see also United States v. Awadala*, 357 F.3d 243, 245 (2d Cir.2004).  The doctrine, which began in the context of appeals, is available in the trial court context, *see In re Grand Jury Subpoenas Dates March 9, 2001*, 179 F. Supp. 2d 270, 286 (S.D.N.Y.2001), and, as this Court has previously recognized, "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades." *United States v. Gayatrinath*, No. 02 Cr. 673 (RMB), 2011 WL 873154, at *2-3 (S.D.N.Y. Mar. 11, 2011) (quoting *In re Grand Jury Subpoenas*, 179 F. Supp. 2d at 286-86).  The doctrine is based on four policy concerns: (1) "assuring the enforceability of any decision that may be rendered against the fugitive"; (2) "imposing a penalty for flouting the judicial process"; (3) "discouraging flights from justice and promoting the efficient operation of the courts"; and (4) "avoiding prejudice to the other side caused by the defendant's escape." *United States v. Morgan,* 254 F.3d 424, 426 (2d Cir.2001).

---

[2] Although in the Quintero Affidavit and the Amended Letter, Owens mentions purported account seizures at a Panamanian Bank (*see* Quintero Aff. at 1; Am. Ltr. at 3), Owens in his Amended Letter appears only to request that this Court exclude possible evidence from the purported search of the Owens's phone.  (*See id.* at 6).

Flight from prosecution is not a condition precedent to being classified as a fugitive; rather, "[a] person who learns of charges against him while he is outside the jurisdiction 'constructively flees' by deciding not to return." *In re Grand Jury Subpoenas*, 179 F.Supp. 2d 270, 287 (S.D.N.Y. 2001). As this Court has stated, "[a] person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges." *Gayatrinath*, 2011 WL 873154, at *2-3 (quoting *United States v. Blanco*, 861 F.2d 773, 779 (2d Cir.1988).

### B.     Discussion

#### 1.     Defendant Owens Is A Fugitive

This Court should conclude as a matter of law that the defendant is a fugitive. *See Mann*, 2003 WL 1213288, at *1. The Indictment in this case was unsealed on or about December 4, 2018. The defendant is represented by U.S.-based defense counsel who has filed a notice of appearance in the case a week after its pubic filing. Yet, despite Owens's knowledge of the Indictment and decision to hire counsel, Owens remains outside of the United States. As such, Owens has "constructively fled" by deciding not to come to the United States, and making no affirmative efforts to do so. *See In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 287 (S.D.N.Y. 2001). Owens's assertion that his failure to appear is "involuntary" is belied by the facts. As set forth above, despite the Government having expressed its willingness to communicate with its foreign government counterparts to facilitate Owens's ability to travel to the United States to face the pending charges against him, Owens has not asked the Government to do so, and the conclusory assertions in the Amended Letter about Owens's inability to travel to the United States to face charges are contrary to his counsel's statements to the Government that he was unwilling to travel to the United States. Moreover, Owens's assertion that his absence is due to foreign judicial proceedings (*see* Am. Ltr. at 1), does not alter his status as a fugitive. *See United States v. Zedner*, 555 F.3d 68, 78 (2d Cir.2009) (rejecting the defendant's claimed lack of funds and criminal arrest in a foreign country as excuses for failure to return to face charges). Therefore, the defendant is properly classified as a fugitive.

#### 2.     The Court Should Deny The Defendant's Motion Under the Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine's four policy considerations all weigh in favor of dismissing the defendant's claims. *Morgan*, 254 F.3d at 426. First, the most basic reason for the existence of the doctrine—that there is no way to enforce an adverse decision against the fugitive—is highly relevant and weighs in the Government's favor. Should the Court deny Owens's motion, Owens will still not be brought to trial and will remain abroad. Similarly, denying this motion on the ground of fugitive disentitlement would impose an appropriate remedy for Owens's decision to "flout[ ] the judicial process," would discourage others from fleeing from justice, and will promote the efficient operation of the courts. *See United States v. Gorcyca*, No. 08 Cr. 9 (FB), 2008 WL 4610297, at *2 (E.D.N.Y. Oct. 16, 2008) (denying motion to dismiss filed by fugitive who fled to Canada after having been indicted in the United States). Finally, the Government has suffered prejudice because it has expended time and resources in its efforts to bring Owens to justice and litigating this pending motion.

4

The defendant, after learning of the Indictment and hiring defense counsel, has failed to face the charges against him. As a fugitive, this Court should not "entertain the cause of one who will respond to a judgement only if it is favorable. *See Gayatrinath*, 2011 WL 873154, at *2 (quoting *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280-82 (2d Cir.1997). The Government respectfully requests that this Court deny the defendant's request pursuant to the fugitive disentitlement doctrine.

## II. THE DEFENDANT'S ATTEMPT TO CHALLENGE UNCOMFIRMED MLAT REPONSES SHOULD BE DENIED

As set forth above, Owens is a fugitive from the law. It is the Government's position that until such time that Owens appears as a defendant in this District, he is not entitled to any information regarding whether any requests have been made by the Government to Panamanian authorities, nor any returns to any such requests, pursuant to Federal Rule of Evidence 16 or otherwise, nor to object to the Government's use of any evidence pertaining to or seized from him in the course of its prosecution of him or any of his co-defendants. Nevertheless, to the extent that the Court does not dismiss Owens's motion on the basis of the fugitive disentitlement doctrine, even taking at face value the facts as set forth in the Quintero Affidavit, Owens's motion to exclude evidence is wholly without merit.

### A.   Applicable Law

"Suppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials." *United States v. Getto*, 729 F.3d 221, 227 (2d Cir.2013) (quoting *United States v. Lee*, 723 F.3d 134, 140 (2d Cir.2013); *see also United States v. Busic*, 592 F.2d 13, 23 (2d Cir.1978) ("[T]he Fourth Amendment and its exclusionary rule do not apply to the law enforcement activities of foreign authorities acting in their own country."). The Second Circuit has recognized two limited exceptions where evidence obtained from a foreign country may be excluded: (1) "where the conduct of foreign officials in acquiring the evidence is so extreme that it shocks the judicial conscience; and (2) where cooperation with foreign law enforcement officials may implicate constitutional restrictions." *See Lee*, 723 F.3d at 140. This authority does not stem from the Fourth Amendment, but rests in the court's authority to exercise its supervisory powers over the administration of justice. *See United States v. Maturo*, 982 F.2d 57, 60-61 (2d Cir.1992).

As to the first exception to the general rule of non-suppression of evidence gathered by foreign law enforcement, the shock the conscience standard is high. *See Getto*, 729 F.3d at 228. Foreign law enforcement conduct must surpass being "simply illegal," instead it must be "egregious." *Id.* (citing *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 66 (2d Cir.1975)). To shock the conscience, the Second Circuit has generally required conduct that included "torture, terror, or custodial interrogation of [some] kind." *Id.* (quoting *Gengler*, 510 F.2d at 66); *see also United States v. Umeh*, 646 F. App'x 96, 100 (2d Cir.2016) (explaining that government conduct that shocks the conscience typically entails extreme physical coercion that causes brutal injuries that offend human dignity); *United States v. Nagelberg*, 434 F.2d 585, 587 n.1 (2d Cir.1970) (explaining that the conduct in question did not shock the judicial conscience because there was "no claim of 'rubbing pepper in the eyes,' or other shocking conduct."). Further, a defendant who demonstrates that "evidence derived from a foreign search . . . violated foreign law" is insufficient

5

to exclude that evidence from the American prosecution. *Id.* at 229 (quoting *United States v. Mitro*, 880 F.2d 1480, 1484 (1st Cir.1989)).

As to the second exception, the "constitutional restrictions" exception may attach in two situations: "(1) where conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." *Id.* at 230 (quoting *Lee*, 723 F.3d at 140). For foreign law enforcement to be deemed virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign officials. *Id.* It is not enough for a defendant to show that the foreign government acted pursuant to an American MLAT request. *Id.* For the 'law enforcement cooperation to evade constitutional requirements' argument to be accepted, the defendant must demonstrate there was an intent to evade American constitutional requirements. *Id.* at 232.

### B.     Discussion

Suppression of any MLAT return of information or data contained on Owens's mobile device is not appropriate here because neither of the limited exceptions permitting introduction of evidence gained from foreign officials are applicable. In an attempt to establish otherwise, Owens raises four main concerns: (1) the method by which foreign authorities gathered personal information from Owens's mobile device—purportedly through the threat of arrest—is illegal; (2) Owens's counsel was not provided with a judicial order authorizing the search of the defendant's property; (3) foreign authorities served as agents because they executed an MLAT request purportedly at the behest of U.S. officials; and (4) potential attorney-client protected information exists on the defendant's mobile device. (*See* Am. Ltr. at 3-5). Each of these arguments is without merit.

#### 1.     The Conduct Detailed By The Defendant Does Not Shock The Conscience

To begin, Owens does not establish that the means by which any search or seizure occurred of his cell phone shocks the conscience as is necessary to warrant suppression. First, Owens argues the method by which evidence from his mobile device was gathered—through the purported threat of arrest—shocks the conscience.[3] (*See* Am. Ltr. at 4). That is incorrect. To demonstrate the requisite standard, typically, physical coercion that includes brutal injuries must be demonstrated. *See Umeh*, 646 F. App'x at 100. Owens, however, has not articulated anything close to this level of conduct, and offers no evidence that he was subjected to torture, terror, or custodial interrogation. *See Getto*, 729 F.3d at 228. Taking Owen's assertion about the purported threat of

---

[3] Although Owens's Amended Letter conclusively states that he was "forced to comply" with the purported search of his device "under the threat of arrest by the Panamanian authorities," (Am. Ltr. at 2), the Quintana Affidavit notes that Owens appeared before the "Forensic Information and Technology Section" with counsel present "as he feared to be arrested if he did not appear." (Quintana Aff. at 2-3).

arrest on its face, this is a far cry from the conduct required to shock the conscience of the Court. *See Nagelberg*, 434 F.2d at 587 n.1.

Owens next argues that his attorneys should have been provided "with an order and/or correspondence from this Court ordering a valid search of [Owens's] mobile device." (Am. Ltr. at 5). But Owens misunderstands the way an MLAT request works in obtaining evidence from a foreign government. An MLAT request is submitted from one country's central law enforcement authority to a foreign country's central law enforcement authority, pursuant to the terms of the treaty itself. *See generally Getto*, 729 F.3d at 225. The sending of an MLAT from the United States central law enforcement authority seeking specific evidence does not require an order or authorization from this Court, but instead, typically requires legal process to be executed by the foreign central law enforcement authority. *See generally id.* at 228-29. In *Getto*, the Court noted that foreign law enforcement officials who received the MLAT request may have entirely failed to obtain a warrant under the requisite foreign law to conduct a search or surveillance. *Id.* at 229-30. However, this conduct did not shock the conscience of the Court, even where there may have been a violation of foreign law. *See id.*

Because, accepting Owens's assertions at face value, the conduct he describes as a matter of law fails to meet the Second Circuit's "shocks the conscience" standard requisite for the relief he seeks. Therefore, his arguments under this exception are without merit.

### 2. The Constitutional Restrictions Exception Fails

Owens next argues that the conduct of the foreign law enforcement officials "at the demand of the U.S. Attorney's Office for the Southern District of New York, renders them an agent of the United States," and, thus, they should not be allowed to circumvent U.S. constitutional rights Owens might have in the materials that were searched. (*See* Am. Ltr. at 3). This argument also fails as a matter of Second Circuit law.

First, accepting the facts as Owens describes them, the foreign law enforcement officials who purportedly seized and searched his phone do not constitute "virtual agents" of the United States. Owens's only argument to the contrary is his suggestion that the gathering of evidence from a mobile device by foreign law enforcement, based on a possible MLAT request, makes foreign law enforcement an agent of the United States. (*Id.* at 5). But the Second Circuit has held that the use of an MLAT to request evidence is not proof of control. *See United States v. Gasperini*, 894 F.3d 482, 489 (2d Cir.2018). Moreover, Owens has failed to articulate any additional argument as to how United States law enforcement played some role in controlling or directing the conduct of the foreign law enforcement officials, aside from simply making a possible MLAT request. As such, Owens has failed to show that foreign law enforcement was an agent of the United States.

Second, Owens fails to articulate any argument to demonstrate that the purported cooperation between the United States and foreign law enforcement was designed to evade constitutional requirements. *See Getto*, 729 F.3d at 232. Contrary to Owens's assertion that the fact that counsel was "not provided with an order and/or correspondence from this Court" warrants suppression or constitutes some sort of infringement upon his rights (Am. Ltr. at 5), Owens's current status, abroad in a foreign country, illustrates precisely why MLAT requests are necessary

to effectuate searches in furtherance of investigations. *See, e.g.,* Fed. R. Crim. P. 41(b) (generally limiting magistrate judge's jurisdiction to issue a search warrant to property found in that District). At bottom, United States law enforcement presently lacks the capability to seize and search evidence in Owens's custody and control, and as such can only do so through an MLAT request. *See generally Maturo*, 982 F.2d at 62 (explaining that the Turkish National Police's wiretapping of phones in Turkey was not done to bypass American constitutional constraints, but because of logistical problems). Moreover, there is no constitutional requirement that U.S. law enforcement is required to inform a defendant's counsel that it intends to search the defendant's phone. Indeed, because of a legitimate fear that valuable evidence might be destroyed or otherwise lost, search warrants in the normal course routinely are sealed and only provided to a defendant (even ones represented by counsel) <u>after</u> they have been executed. And even in the United States, defendants who resist the execution of a search warrant may be subject to arrest. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 171 n.8 (2d Cir.2008) (explaining that the subject of a search warrant cannot resist its execution and can be prosecuted for resisting the execution of a search warrant pursuant to 18 U.S.C. § 2231(a)). Here, Owens has failed to articulate any constitutional protections that United States law enforcement were attempting to evade, and his fugitive status in a foreign country is the reason any MLAT to gather evidence would be wholly justified.

The attorney-client privilege concerns raised by the defendant do not alter this result. (Am. Ltr. at 4-5). As it does in any case involving seized devices that may contain privileged communications, the Government as a matter of policy implements taint review procedures, as it has in this case with evidence seized from the Accounting Firm and MLAT request returns of evidence seized abroad, so as to ensure that the prosecution team does not review any potentially privileged material pertaining to the defendant. (*See* Dkt. 96 at 10). Thus, any concerns raised at this juncture by Owens regarding privilege are at best hypothetical and speculative, and thus cannot constitute a reason why the fruits of any MLAT request pertaining to Owens's mobile phone should be suppressed.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court deny the defendant's Letter Motion in its entirety.

Dated: New York, New York
June 7, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York


DEBORAH CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division


By: /s/ Parker Tobin

Michael Parker
Parker Tobin
Trial Attorneys, Criminal Division

Eun Young Choi
Thane Rehn
Assistant United States Attorneys


cc: Defense Counsel (by ECF)

9