

*7621 13th Avenue, Brooklyn NY 11228*
*Office: 718.305.1702*
*Fax: 718.395.1732*

June 17, 2019

VIA ECF
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: **UNITED STATES V. OWENS, ET AL., 18 CR. 693 (RMB)**
**AMENDED REPLY TO THE GOVERNMENT'S OPPOSITION**

Dear Judge Berman:

The defense counsels for Attorney Ramses Owens respectfully make the instant submission in reply to the Government's Opposition to the Amended Letter Motion filed with this Court on May 30, 2019. (Dkt. 94, 95). The Government in its opposition contends that the Letter Motion filed by on behalf of Attorney Ramses Owens should deny pursuant to the fugitive disentitlement doctrine. In addition, the Government argues that Attorney Ramses Owens' request for suppression of private information and materials should be denied because the Government via a Mutual Legal Assistance Treaty ("MLAT") may have obtained the information and materials. The Government's arguments in its opposition fail on several grounds.

## I. BACKGROUND

Attorney Ramses Owens is a native and citizen of the Republic of Panama who worked in the Panamanian law firm Mossack Fonseca. It is important to note that Attorney Ramses Owens was not a partner of Mossack Fonseca but a salary employee that took directions from his superiors during the employment relationship. As a native and citizen of the Republic of Panama Attorney Ramses Owens has neither the duty to disclose to the United States any personal information nor the obligation to file income tax returns with the United States federal government.

On or about May 15, 2018, the Public Ministry of the Republic of Panama ordered for Attorney Ramses Owens to be confined to house detention and his travel was restricted to solely within the territory of the Republic of Panama.[1] (Exhibit B) On or about the month of August of 2018, the order that placed Attorney Ramses Owens under house detention was modified and Attorney Ramses Owens was required to post bail. On December 4, 2018, this Court unsealed an Indictment that names Attorney Ramses Owens as a defendant. On December 6, 2018, the Public Ministry of the Republic of Panama arrested Attorney Ramses Owens pursuant to the criminal

---

[1] The Seventh Prosecutor's Office for Anticorruption ordered for Attorney Ramses Owens to be placed under house arrest.

investigation named "LAVA-JATO."  For a period of 24 hours he was secluded by the previously mentioned government entity, which prevented him to have contact with his family and legal counsel. On December 7, 2018, the Second Prosecutor's Office of Public Ministry of the Republic of Panama initiated a criminal investigation entitled "Panama Papers - Siemens." The previously mentioned government entity arrested and placed criminal charges against Attorney Ramses Owens. On December 13, 2018, the 18th Circuit Criminal Court ordered the release of Attorney Ramses Owens subject to restrictions placed by the criminal court. Despite the release order from the 18th Circuit Criminal Court, the Director of the Direction of Judicial Investigation (DIJ) refused to release Attorney Ramses Owens from detention.

On December 17, 2018, this Court asked an Assistant United States Attorney (AUSA) about the whereabouts of Attorney Ramses Owens. (Reference Dkt. 31-Transcript of Hearing) (Exhibit C) The AUSA before the Court on the previously mentioned date only informed the Court that Attorney Ramses Owens was in Panama. In other words, the AUSA did not disclose to the Court that Attorney Ramses Owens was imprisoned by the Panamanian Authorities.

On December 18, 2018, in good faith the undersigned counsels met the AUSAs overseeing the prosecution of the above entitled criminal case to inform them of the events that transpired at that particular period of time in the Republic of Panama.

On January 10, 2019, the Supreme Court of Justice of the Republic of Panama (En banc) adjudicated a Habeas Corpus filed by Attorney Ramses Owens against the Second Prosecutor's Office of the Public Ministry of the Republic of Panama. The Supreme Court ordered the release of Attorney Ramses Owens subject to the following conditions: (1) to surrender his passport or travel documents, (2) to abide to the travel restriction of not leaving the territory of the Republic of Panama, (3) to report to the Public Ministry of the Republic of Panama every Monday and Friday, (4) to maintain at his residential home at all times. On January 11, 2019, Attorney Ramses Owens was released from detention because of the release order issued by the Supreme Court of Justice of the Republic of Panama.[2] (Exhibits D, E, F)

In sum, Attorney Ramses Owens has been arrested on three (3) different occasions, he has surrendered his passport to the Panamanian authorities, has posted bail twice, has to abide with two orders that restrict his travel only within the territory of the Republic of Panama, and has the obligation to report twice a week to the officials of the Public Ministry of the Republic of Panama.

## II.   ARGUMENT

### A. U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK CANNOT INFRINGE THE NATIONAL SOVEREIGNTY OF THE REPUBLIC OF PANAMA

An Assistant United States Attorney carries the full weight and power of the United States Government with him/her due to the nature of his/her office and job. The Government in its opposition states the following: "despite the Government having expressed its willingness to communicate with its foreign government counterparts to facilitate Owens's ability to travel to the United States to face the pending charges against him, Owens has not asked the Government to do

---

[2] News report regarding unlawful detention of Attorney Ramses Owens.
https://www.youtube.com/watch?v=1_cmxS14ilo

so, and the conclusory assertions in the Amended Letter about Owens's inability to travel to the United States to face charges are contrary to his counsel's statements to the Government that he was unwilling to travel to the United States."[3] (Govt. Opposition Pg. 4)

The aforesaid statement by the Government in its opposition is a clear example that the AUSAs strongly believe that they can flex their muscles and tell their agent, the Panamanian government, to backdown and take a backseat to the prosecution of Attorney Ramses Owens. To clarify, the Supreme Court of Justice of the Republic of Panama (the highest court of the Republic of Panama) has ordered that Attorney Ramses Owens cannot depart the territory of the Republic of Panama without its consent. In addition, Attorney Ramses Owens is confronting criminal investigations and cases in the Republic of Panama. In other words, the Government does not care or take in consideration the superior interest of a sovereign nation like the Republic of Panama to prosecute its own citizen. In light of the facts stated above, the Government can only make such a statement like the one supra if the Panamanian authorities are actually its agent.

One of the fundamental attributes of sovereignty is a state's authority to exercise criminal jurisdiction over persons accused of committing crimes within its territory. (*Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 206 (2d Cir. 2009)). Any government, however violent and wrongful in its origin, must be considered a de facto government if it was in the full and actual exercise of sovereignty over a territory and people large enough for a nation." (*Ford v. Surget*, [**32] 97 U.S. (7 Otto) 594, 620, 24 L. Ed. 1018 (1878) (Clifford, J., concurring) (cited in *Kadic v. Karadzic*, 70 F.3d 232, 244 (2d Cir. 1995)). From the statement made by the Government, the interest of the Republic of Panama to investigate and later prosecute its citizen, Attorney Ramses Owens, is not important to the United States.

To reiterate, the absence of Attorney Ramses Owens in the above entitled case is because judicial orders issued by Panamanian courts prevent him to depart the territory of the Republic of Panama to assure his presence in the pending criminal cases. In other words, Attorney Ramses Owens absence from these proceedings is involuntary, thus he cannot be considered as a fugitive.

Furthermore, in the future, Attorney Ramses Owens will avail himself to before this Court to confront the charges against him. Therefore, the undersigned counsels on behalf of Attorney Ramses Owens respectfully ask this Court to exclude the personal information and materials unlawfully obtained from Attorney Ramses Owens's mobile device by the Government via a MLAT request to its agent the Panamanian authorities for him to have a fair trial in the future before this Court.

### B. THE GOVERNMENT WAS PUT ON NOTICE OF ATTORNEY RAMSES OWENS DETENTION BY THE INTERNATIONAL MEDIA COVERAGE OF THE CASES SURROUNDING THE "PANAMA PAPERS"

The Government could not have been ignorant of the detention of Attorney Ramses Owens by the Panamanian Authorities and the criminal charges that Attorney Ramses Owens faces in the Republic of Panama. The international media is following and reporting the events that occur in

---

[3] The part of the Government's statement indicating that undersigned counsels stated that Attorney is unwilling to travel to the United States to face the charges is grossly false.

each investigation and criminal case around the world associated with the "Panama Papers" and the now-defunct law firm "Mossack Fonseca." Therefore, the Government has known that Attorney Ramses Owens's absence in these proceedings is involuntary because of the judicial orders issued by the Panamanian courts.

Traditionally, newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein. (Fed. R. Evid. 802; *Jordonne v. Ole Bar & Grill, Inc.*, No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, 2016 WL 3409088, at *6 (S.D.N.Y. Apr. 26, 2016), report and recommendation adopted sub nom. *Jordan v. Ole Bar & Grill, Inc.*, No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 78669, 2016 WL 3360524 (S.D.N.Y. June 16, 2016) ("To the extent that Plaintiffs offer these articles for the truth of the matter asserted therein, they are inadmissible hearsay."); *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) ("The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein.")).

However, articles offered not for the truth of the statements made therein, but rather to show that a party had notice about a specific set of facts are sometimes admissible as non-hearsay evidence. (*Ole Bar & Grill*, No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, 2016 WL 3409088, at *6 (finding that articles offered "to demonstrate that Defendants were on notice of allegations of violence at their venue . . . [are] non-hearsay because they are not being offered for the truth of the matter asserted"), and *Housing Works, Inc. v. Turner*, No. 00 Civ. 1122, 2004 U.S. Dist. LEXIS 18909, 2004 WL 2101900, at *4 (S.D.N.Y. Sept. 15, 2004), report and recommendation adopted as modified, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) (finding that weekly newsletters "cannot be defined as hearsay under Federal Rule of Evidence 801(c) because the plaintiff has not cited them to prove the truth of the statements they contain;" (*United States v. Buck*, 2017 U.S. Dist. LEXIS 190119, at *5-6 (S.D.N.Y. Oct. 28, 2017)).

The news articles submitted with this reply are not for the truth of the statements contained therein, but rather to demonstrate that the Government had notice that Attorney Ramses Owens is facing criminal charges in the Republic of Panama and is unable to be present before this Court because of the judicial orders that prevent him to depart the territory of the Republic of Panama. Therefore, Attorney Ramses Owens cannot be deemed a fugitive because his absence in the abovementioned criminal matter is involuntary. (Exhibit G)

### C. THE GOVERNMENT IS VIOLATING THE TERMS OF THE MLAT

In late March of 1991, the United States and the Republic of Panama agreed to renew negotiations on a treaty using a draft text essentially identical to the Mutual Legal Assistance Treaty (MLAT) which the United States signed with the Bahamas in 1989. On April 11, 1991, the United States and the Republic of Panama signed a MLAT that entered into force in the United States on September 6, 1995. While many of the MLATs signed by the United States cover most tax related felonies, several of them only have a limited coverage at best, for tax offenses. One reason that MLATs do not cover tax offenses is because "tax laws embody a sovereign's political will." (*Republic of Colom. v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 385 (E.D.N.Y. 2007)). In addition, "they create property rights and affect each individual's relationship to his or her sovereign." *(.id)*.

The MLAT between United States and Panama excludes tax offenses except for tax matters arising from unlawful activities otherwise covered by the MLAT. To clarify, the treaty "covers a broad range of offenses, except pure cases of tax evasion." On January 31, 2019, the Republic of Panama enacted Law 70 of 2019, that establishes tax evasion as a criminal offense. **According to**

4

**the terms of the MLAT, the double criminality rule must be satisfied before the requested state assists the requesting state. In other words, assistance will be provided if the acts charged are criminal by the laws of both countries.** (*Collins v. Loisel*, 259 U.S. 309, 310, 42 S. Ct. 469, 470 (1922)). **It is important to note that the dates depicted in the Indictment of when the alleged criminal offenses were committed are before January 31, 2019.** Therefore, the Republic of Panama should have denied the request of the United States for assistance because tax evasion was not a crime in the Republic of Panama on the dates the alleged criminal acts mentioned in the Indictment of this case supposedly occurred.

Furthermore, the MLAT between the United States and Panama includes five kinds of crimes for which double criminality is unnecessary. The criminal offenses are: (1) Crimes relating to illegal narcotics trafficking; (2) Theft; (3) A crime of violence; (4) Fraud or the use of fraud; (5) Violations of a law of one of the contracting states relating to currency or other financial transactions. Regarding the criminal offense (4) Fraud, the Annex makes it clear that ''the subparagraph would not include tax evasion cases not related to other offenses covered by this Treaty . . .'' In other words, fraud in relation to tax evasion is not covered in the MLAT between the United States and Panama. From the facts stated above two questions arise. First, how is the Government requesting information and materials for an alleged tax evasion case under the MLAT? Second, how is the Republic of Panama not denying the request of the Government for assistance in a tax evasion case? Attorney Ramses Owens respectfully asks the Court to order the Government to produce the MLAT applications sent to the Republic of Panama for the Court to review and determine whether the requests are in accord with the terms of the MLAT signed between the United States and the Republic of Panama. In sum, the treaty between the United States and the Republic of Panama regarding Mutual Legal Assistance in Criminal Matters disclaims assistance in purely tax evasion cases like the present one. (Exhibit H)

### D. ATTORNEY RAMSES OWENS IS NOT A FUGITIVE

The fugitive disentitlement doctrine is not applicable to Attorney Ramses Owens because he is not deliberately refusing to enter the United States in order to avoid prosecution. In other words, the present issues are "whether Attorney Ramses Owens is free to leave the Republic of Panama and travel to the United States and whether his failure to travel to the United States to face prosecution is willful. As stated supra, Attorney Ramses Owens's absence from these proceedings is due to the judicial orders issued by Panamanian courts that prevent him to leave the territory of the Republic of Panama while the criminal cases against Attorney Ramses Owens are pending.

The fugitive disentitlement doctrine prohibits an individual from using the courts to further one claim while avoiding the courts' jurisdiction on another matter. The doctrine had allowed appellate courts, based on their inherent authority, "to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive." (*Degen v. United States*, 517 U.S. 820, 823, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996) (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993) (cited in *United States v. 6,190.00 in United States Currency*, 581 F.3d 881, 885 (9th Cir. 2009)).

The fugitive disentitlement doctrine was originally developed by courts to support dismissal of direct appeals by escaped criminal defendants. As the Supreme Court explained in *Smith v. United States*, 94 U.S. 97, 97, 24 L. Ed. 32 (1876), "it is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party . . . is where he can be made to respond to any judgment we may render." Accord *Molinaro v. New Jersey*, 396 U.S. 365, 366, 24

L. Ed. 2d 586, 90 S. Ct. 498 (1970) (escape "disentitles the defendant to call upon the resources of the Court for determination of his claims") (cited in *Collazos v. United States*, 368 F.3d 190, 197 (2d Cir. 2004)).

In determining whether the fugitive disentitlement doctrine is applicable, a court should consider the following four grounds: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." (*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997) (drawing factors from *Bar-Levy v. United States Dep't of Justice*, 990 F.2d 33, 35 (2d Cir. 1993)). Thus, in addition to protecting litigants and ensuring that adverse judgments can be enforced, the fugitive disentitlement doctrine is intended to sanction fugitives for affronting the dignity of the court and to deter other appellants from absconding. (*United States v. Awadalla*, 357 F.3d 243, 245-46 (2d Cir. 2004)).

The Government in its opposition misleads this Court by claiming Attorney Ramses Owens is a fugitive based on the decision of the Court of Appeals for the Second Circuit in *United States v. Zedner,* 555 F.3d 68, 78 (2d Cir.2009). In the previous mentioned case, Zedner, the defendant, was given permission to leave the United States for no more than two weeks and before he left he "was specifically warned that if he did not return within two weeks of leaving the United States, he would be considered … to have absconded from supervision." (*United States v. Zedner*, 555 F.3d 68, 78 (2d Cir. 2008)). Zedner departed the United States on September 9, 2007 and failed to return to the United States as required on or before September 23, 2007. *(.id)* Zedner was unable to shed his fugitive status by being accused of new criminal conduct that led to foreign governmental restrictions more than three months after the deadline for his return to the United States. *(.id)*.

In contrast, Attorney Ramses Owens is not a citizen of the United States and he has resided in the Republic of Panama his entire life. Since May of 2018, Attorney Ramses Owens has been facing criminal charges in the Republic of Panama and under the custody of the Panamanian authorities. On December 4, 2018, this Court unsealed an Indictment that names Attorney Ramses Owens as a defendant. In other words, the Government at the time the Indictment was unsealed by this Court knew or should have known that the Ramses Owens was facing criminal charges in the Republic of Panama and unable to travel freely to the United States without the permission from the government of the Republic of Panama. Furthermore, the Government has never formally offered to assist Attorney Ramses Owens to travel the United States. Therefore, Attorney Ramses Owens cannot be considered a fugitive.

### 1. THE FUGITIVE DISENTITLEMENT DOCTRINE IS NOT APPLICABLE

The purposes of the fugitive disentitlement doctrine do not support applying it to Attorney Ramses Owens. First, this Court will be able to enforce its ruling concerning this evidentiary matter. In the event the Court ruled against Attorney Ramses Owens, the criminal case before this Court will continue and Attorney Ramses Owens will still be required to avail himself before this Court in the future. A denial by this Court of Attorney Ramses Owens's request will allow the Government to introduce the unlawfully obtained private information and material as evidence and use it against Attorney Ramses Owens and his co-defendants. In contrast, if the Court's decision is favorable to Attorney Ramses Owens, it will ensure a fair trial for Attorney Ramses Owens and his co-defendants.

The second purpose of the fugitive disentitlement doctrine -- imposing a penalty for flouting the judicial process -- also does not support applying the doctrine to Attorney Ramses Owens. The Indictment in this case was unsealed on or about December 4, 2018. Shortly after, Attorney Ramses Owens retained the undersigned counsels to represent him in the above entitled matter. On December 18, 2018, the undersigned counsels met with the AUSAs to inform them of Attorney Ramses Owens's whereabouts and of the criminal cases against Attorney Ramses Owens in the Republic of Panama, which prevent him from departing the territory of the Republic of Panama. In other words, Attorney Ramses Owens has demonstrated his intention to confront the criminal matter against him in the United States. Furthermore, Attorney Ramses Owens' actions clearly indicates that he is not defying this Court's authority. Therefore, Attorney Ramses Owens is entitled to receive any potentially favorable ruling from this Court because he is willing to stand and face the consequences of any potentially unfavorable rulings in the future.

The third policy objective of the fugitive disentitlement doctrine -- discouraging flights from justice – does not prevent this Court to consider Attorney Ramses Owens's request. Should the Court grant Attorney Ramses Owens' request to suppress the unlawfully obtained information and material obtained by the Government it would not incentivize future defendants to flee prosecution. The purpose of Attorney Ramses Owens' request is to ensure he will have a fair trial when he avails himself before this Court. Therefore, the third policy objective suggests that the fugitive disentitlement doctrine is not applicable to Attorney Ramses Owens because his request does not compromise the authority of this Court.

Lastly, the doctrine's fourth policy objective -- avoiding prejudice to the other parties caused by the defendant's escape – also does not support the application of the doctrine to Attorney Ramses Owens. The Government has not suffered any prejudice because it knew or should have known that at the time the indictment was unsealed by this Court that Attorney Ramses Owens was under the custody of the Panamanian authorities and unable to travel to the United States. It is important to note that Attorney Ramses Owens is not in hiding and the Government knows his whereabouts in the Republic of Panama. Moreover, the Government in its opposition does not state on how a favorable decision to Attorney Ramses Owens' request will be prejudicial to it.

In light of the facts stated above, the Court should find that Attorney Ramses Owens is not a fugitive.

### E. THE GOVERNMENT VIOLATED CONSTUTIONAL REQUIREMENTS AND THE CONDUCT OF THE PANAMANIAN AUTHORITIES SHOCKS THE CONSCIENCE

In the Second Circuit, Federal District Courts have consistently held that the exclusionary rule does not govern the conduct of foreign government officers. However, the U.S. Court of Appeals for the Second Circuit has recognized two exceptions to this rule. "First, where the conduct of foreign officials in acquiring the evidence is 'so extreme that they shock the judicial conscience', a federal court in the exercise of its supervisory powers can require exclusion of the evidence so seized." (*United States v. Maturo*, 982 F.2d 57, 61 (2d Cir. 1992); (quoting *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978)). "Second, where cooperation with foreign law enforcement officials may implicate constitutional restrictions, evidence obtained by foreign officials may be excluded." (.id); (citing *United States v. Paternina-Vergara*, 749 F.2d 993, 998 (2d Cir. 1984)).

"Within the second category for excluding evidence, constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." (.id) (*United States v. Restrepo*, No. S101 Crim. 1113, 2001 U.S. Dist. LEXIS 21760, 2002 WL 10455, at *6 (S.D.N.Y. Jan. 3, 2002)).

1. **CONDUCT OF THE PANAMANIAN AUTHORITIES SHOCKS THE CONSCIENCE**

That which "shocks the conscience" occurs largely in the context of excessive force claims, but it can apply to other areas of government activity as well. (*Velez v. Levy*, 401 F.3d 75, 79 (2d Cir. 2005) The measure of what is conscience-shocking is no calibrated yard stick. (*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001)). Nevertheless, "malicious and sadistic" abuses of power by government officials, intended to "oppress or to cause injury" and designed for no legitimate government purpose, unquestionably shock the conscience. *(.id).*

The Government contends that being under the threat of arrest and imprisonment by the Panamanian authorities when the information and materials were being gathered from Attorney Ramses Owens's personal mobile device at the request of the Government does not shock the conscience. Since, May of 2018, Attorney Ramses Owens has been arrested on three different occasions by the Panama authorities. The last arrest occurred on December 7, 2018. The 18th Circuit Criminal Court on December 13, 2018, ordered the release of Attorney Ramses Owens subject to restrictions placed by the criminal court. The Director of the Direction of Judicial Investigation (DIJ) refused to release Attorney Ramses Owens from detention regardless of the order issued by the 18th Circuit Criminal Court. In other words, Attorney Ramses Owens spent twenty-nine days (29) incarcerated under no legal justification until the Supreme Court of Justice of the Republic of Panama ordered his release on January 10, 2019, after adjudicating a Habeas Corpus filed on behalf of Attorney Ramses Owens. During the 29 days incarcerated, Attorney Ramses Owens suffered physical and psychological harm from the anguish of being incarcerated without justification. Attorney Ramses Owens was deprived of privacy, liberty and subjected to a stigmatized status of a criminal without being convicted for a criminal offense. In addition, his prolonged detention coupled with the constant media coverage surrounding the Panama Paper cases has caused him to be socially convicted by the society of the Republic of Panama. For some prisoners, incarceration is so stark and psychologically painful it represents a form of traumatic stress severe enough to produce post-traumatic stress reactions once released.

Attorney Ramses Owens was under the threat of arrest when the Panamanian authorities were gathering the information and material from his mobile device for the Government. Attorney Ramses Owens feared being incarcerated for an unknown period similarly as in December of 2018, if he did not comply with the orders of Panamanian authorities. Under the totality of the circumstances, a reasonable person may conclude that malicious abuses of power by the Panamanian officials shock the conscience.

## 2. GOVERNMENT EVADED CONSTITUTIONAL REQUIREMENTS

At the time the Government sent the request to the Panamanian Authorities to gather the information and materials stored in the mobile device of Attorney Ramses Owens it knew that the undersigned counsels were representing Attorney Ramses Owens in this case. The Government used the MLAT between United States and the Republic of Panama to circumvent the constitutional requirements to get a search warrant. In contrast, when the Government searched Elder, Gaffey & Paine, P.C., the offices of a co-defendant, it obtained a search and seizure warrant issued by a District Court for the District of Massachusetts.[4] Therefore, the Government failed to provide the undersigned counsels with a notice of the search of Attorney Ramses Owens mobile device. Therefore, constitutional requirements must attach, and the evidence seized by the Panamanian authorities from the mobile device of Attorney Ramses Owens must be excluded because the Government evaded constitutional requirements applicable to it by using the MLAT to obtain the previously mentioned evidence.

## 3. THE PANAMANIAN AUTHORITIES ARE AGENTS OF THE GOVERNMENT

Upon a request made by U.S. Attorney's Office for the Southern District of New York the bank accounts of Revack Holdings Foundation held in a Panamanian Bank were seized by the Public Ministry of the Republic of Panama on or about the week of March 25 to March 29 of 2019. Under the circumstances, the Public Ministry of the Republic of Panama is acting as the agent of the U.S. Attorney's Office for the Southern District of New York. It is important to note that Revack Holdings Foundation is not a party to a civil or criminal matter in the Republic of Panama. Moreover, Revack Holdings Foundation is not a party to a civil or criminal matter in the United States. The interaction between the Government and the Panamanian authorities is confidential and the public is not privileged to such communication. It will be practically impossible to prove that the Government ordered the seizure of the bank accounts, unless this Court orders the Government to provide the MLAT requests sent to the Panamanian authorities. The conduct of the Panamanian Authorities clearly renders them as an agent of the United States. Therefore, constitutional requirements must attach, and the evidence seized by the Panamanian authorities from the mobile device of Attorney Ramses Owens must be excluded.

---

[4] Government relied on the "Panama Papers" to obtained search and seizure warrant. (Doc. 76-5, Page 6).
U.S. District Judge Richard F. Boulware has declined to sanction the now-defunct Panama-based law firm Mossack Fonseca in a civil suit seeking to recover $1.6 billion in bonds from Argentina, stating that the so-called "Panama Papers" are not reliable enough to serve as a basis for sanctions. (*NML CAPITAL, LTD v. REPUBLIC OF ARGENTINA, et al.* Case 2:14-cv-00492-RFB-VCF, Doc. 307, Filed 03/27/19) (Cuelo, Emma, "*Panama Papers Deficient for Mossack Fonseca Sanctions Bid.*" LAW 360, March 28, 2019).

### 4. THE DATA PROCURED BY THE UNITED STATES CONTAINS ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS AND MUST BE EXCLUDED AS EVIDENCE

Notwithstanding Attorney Ramses Owens's absence, he must be afforded all the rights and protections provided by the laws of the United States. The data and the communication records acquired from the mobile device of Attorney Ramses Owens by the Panamanian Authorities for the United States Attorney's Office for the Southern District of New York must be excluded because it runs afoul to the principals of our judicial system. The data procured by the United States contains attorney-client privileged communications, between the undersigned counsels and Attorney Ramses Owens. It is important to note, that the data and communication obtained also contains attorney-client communication between Attorney Ramses Owens and his clients, who are not parties to this criminal matter. Therefore, the undersigned counsels respectfully request that the data and communication records acquired from the mobile device of Attorney Ramses Owens by the Panamanian Authorities must be excluded as evidence because the cooperation between the United States Attorney's Office for the Southern District of New York and the Panamanian Authorities was intended to evade constitutional requirements applicable to United States Attorney's Office for the Southern District of New York.

## III. CONCLUSION

For the foregoing reasons, the defendant, Attorney Ramses Owens, respectfully requests that the Court grant his Letter Motion and exclude the unlawfully obtained evidence and not to be considered a fugitive.

Respectfully submitted,

| | |
|---|---|
| /s/Jeremy Iandolo | /s/ Charlie Carrillo |
| Jeremy Iandolo, Esq. | Charlie Carrillo, Esq. |
| 7621 13th Street | 259 West Patrick Street |
| Brooklyn, NY 11228 | Frederick, Maryland 21701 |
| E-mail: jiandolo@jiandololaw.com | E-mail: charlie@carrillobrux.com |
| Phone: 718-303-0802 | Phone: 301.378.8595 |