UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                              :

      v.                                                    :

RAMSES OWENS, a/k/a "Ramses Owens Saad,                :
DIRK BRAUER,                                                   1:18-cr-00693
RICHARD GAFFEY, a/k/a "Dick Gaffey,"                   :
and HARALD JOACHIM VON DER GOLTZ,
a/k/a "H.J. van der Goltz, a/k/a "Johan von der Goltz,"  :

      Defendants.                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT RAMSES OWENS' MEMORANDUM OF LAW IN SUPPORT
OF HIS OPPOSITION TO THE APPLICATION OF THE
FUGITIVE DISENTITLEMENT DOCTRINE**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 4

II. STATEMENT OF FACTS ............................................................................................. 4

III. ARGUMENTS ................................................................................................................ 8

   A. OWENS IS NOT A FUGITIVE FROM JUSTICE ................................................... 8

   B. THE COURT SHOULD NOT APPLY THE FUGITIVE DISENTITLEMENT DOCTRINE TO OWENS ........................................................................................... 11

   C. THE COMMENTS MADE BY THE GOVERNMENT IN ITS MEMORANDUM ARE MISLEADING .................................................................................................. 15

   D. OWNES HAS THE INCENTIVE TO APPEAR AND CHALLENGE THE ALLEGATIONS ........................................................................................................ 15

IV. CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

CASES

*Bar-Levy v. United States Dep't of Justice*, 990 F.2d 33, 35 (2d Cir. 1993) -------------- 4
*Collazos v. United States*, 368 F.3d 190, 198 (2d Cir. 2004) -------------------------------- 9
*Degen v. United States*, 517 U.S. 820, 828-829 (1996) -------------------------------------- 4
*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997) -- 4
*Gallo-Chamorro v. United States*, 233 F.3d 1298, 1301 (11th Cir. 2000) -------------- 16
*In re Berrocal*, No. 17-22197-Civ-TORRES, 2017 U.S. Dist. LEXIS 140687, at *29-30 (S.D. Fla. Aug. 31, 2017) ---------------------------------------------------------------------- 16
*Jhirad v. Ferrandina*, 536 F.2d 478, 483-84 (2d Cir.), cert. denied, 429 U.S. 833, 50 L. Ed. 2d 98, 97 S. Ct. 97 (1976) ---------------------------------------------------------- 8
*Matter of Assarsson*, 687 F.2d 1157, 1161-62 [**12] (8th Cir. 1982) -------------------- 8
*Smith v. United States* ------------------------------------------------------------------------- 18
*Smith v. United States*, 94 U.S. 97, 97 (1876) ---------------------------------------------- 18
*United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1324 (9th Cir. 1978) ------------ 8
*United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984) --------------------------------- 8
*United States v. Contents of Account Number 68108021 Held in the Name of Stella Collazos*, 228 F.Supp.2d 436, 438 (S.D.N.Y. 2002) ----------------------------------- 14
*United States v. Hayes*, 118 F. Supp. 3d 620 (S.D.N.Y. 2015) --------------------------- 12
*United States v. Khan*, No. 92-10165, 1993 U.S. App. LEXIS 10556, at *1 (9th Cir. Apr. 6, 1993) ------------------------------------------------------------------------------- 16
*United States v. Sai-Wah*, 270 F. Supp. 2d 748, 749 (W.D.N.C. 2003) ----------------- 16
*United States v. Technodyne LLC*, 753 F.3d 368 (2d Cir. 2014) -------------------------- 8

STATUTES

21 U.S.C. § 843(b) ------------------------------------------------------------------------------ 17
Law 25 of June 12, 1995 ----------------------------------------------------------------------- 17
Law 32 of February 26, 1927 ----------------------------------------------------------------- 17

TREATISES

Chloe S. Booth, Note: *Doctrine On The Run: The Deepening Circuit Split Concerning Application Of The Fugitive Disentitlement Doctrine To Foreign Nationals*, 59 B.C. L. Rev. 1153, 1158 (March 2018) ------------------------------------------------------- 18

Gary P. Naftalis & Alan R. Friedman, *Fugitive Disentitlement in Civil Forfeiture Proceedings*, N.Y.L.J., Dec. 19, 2002 ------------------------------------------------- 18

# I.  INTRODUCTION

[T]he sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.

*(Degen v. United States*, 517 U.S. 820, 828-829 (1996)).

The Government seeks to disentitle Ramses Owens ("Owens") from his right to be heard and defend himself. In order to disentitle Owens, the Court must apply separate two tests. The first test determines if Owens is actually a fugitive and then determine whether to apply the fugitive disentitlement doctrine (the "Doctrine") to Owens. In assessing whether to apply the Doctrine, courts weigh the following factors: (1) whether a decision on the merits would be enforceable; (2) whether the defendant is flouting the judicial process; (3) whether a decision on the merits would encourage similar flights from justice; and (4) whether the defendant's evasion prejudices the Government. (*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997) (drawing factors from *Bar-Levy v. United States Dep't of Justice*, 990 F.2d 33, 35 (2d Cir. 1993)). Under the totality of the circumstances present in this case, Owens cannot be deemed a fugitive and the fugitive disentitlement cannot be applied to him.

# II.  STATEMENT OF FACTS

Defendant Owens is a national and citizen of the Republic of Panama. He worked as an attorney at the Panamanian law firm Mossack Fonseca. The Government indicted Owens under a sealed indictment—Indictment 18 CRIM 163

("Indictment") on September 27, 2018 charging Owens with five counts to include: Count One: Conspiracy to Defraud the United States, Count Two: Conspiracy to Commit Wire Fraud, Count Three: Conspiracy to Commit Tax Evasion, Count Four: Wire Fraud, and Count Five: Money Laundering Conspiracy. The eleven-count indictment further charges his co-defendants, with Counts Six through Nine: Willful Failure to File an FBAR (Gaffey and Von Der Goltz), and Counts Ten and Eleven: False Statements (Von Der Goltz). The Indictment was unsealed on December 6, 2018.

On May 21, 2018, prior to being indicted in the United States, the Second Prosecutor's Office Against Organized Crime of the Republic of Panama filed criminal charges against Owens and others for the alleged commission of an offense against the Economic Order in the form of Money Laundering (Registration 06-16 (LAVA JATO)). Owens was confined to house arrest and his travel was restricted to solely within the territory of the Republic of Panama. On August 16, 2018, the 18th Circuit Court of the First Judicial Circuit of Panama set bail at $150,000.

On December 6, 2018, the Second Specialized Prosecutor's Office Against Organized Crime rearrested Owens pursuant to the criminal investigation named "LAVA-JATO." In addition, on December 6, 2018, the Second Specialized Prosecutor's Office Against Organized Crime filed charges against Owens and twenty-six (26) individuals for the alleged commission of offenses against the Economic Order in the form of Money Laundering, as it pertains to the company, SIEMENS. (Registration

02-16). On December 13, 2018, the 18th Circuit Court of the First Judicial Circuit of Panama set a second bail for the amount of $150,000.

On December 17, 2018, this Court asked an Assistant United States Attorney (AUSA) about the whereabouts of Owens. (Reference Dkt. 31-Transcript of Hearing) The AUSA, before the Court, on the previously mentioned date, only informed the Court that Attorney Ramses Owens was in Panama. In other words, the AUSA failed to disclose to the Court that Owens was incarcerated by the Panamanian Authorities.

On December 18, 2018, in good faith, the undersigned counsel met the AUSAs, overseeing the prosecution of the above entitled criminal case, to inform them of the events that transpired at that particular period of time in the Republic of Panama.

On January 10, 2019, the Supreme Court of Justice of the Republic of Panama (En banc) adjudicated a Habeas Corpus filed by Owens against the order of detention issued by the Second Prosecutor's Office of the Public Ministry of the Republic of Panama. The Supreme Court ordered the release of Owens subject to the following conditions: (1) to surrender his passport or travel documents, (2) to abide to the travel restriction of not leaving the territory of the Republic of Panama, (3) to report to the Public Ministry of the Republic of Panama three times a week , (4) to maintain at his residential home at all times. On January 11, 2019, Owens was released from detention.

On September 3, 2019, this Court issued an order that states that "if Owens' counsel is seeking to obtain permission for client to appear in NYC, they should meet and confer with Govt. ASAP and seek to arrange prior to 9/19." To comply with the

order, Owens on or about September 25, 2019, by and through his legal representative in the Republic, petitioned the 18th Circuit Court of the First Judicial Circuit of Panama for permission to travel to New York to appear before this Court at the hearing scheduled for October 29, 2019. The translation of documents from the English to Spanish and the mailing of the apostille copies of the court records delayed the filing of the petition.

On October 11, 2019, the Prosecutor Isis Del Carmen Soto of the Second Specialized Prosecutor's Office Against Organized Crime of the Republic of Panama filed an opposition to Attorney Ramses Owens' petition for permission to travel to New York to appear before this Court on October 29, 2019 in each of the criminal cases against Attorney Ramses Owens. Both of the oppositions filed with the 18th Penal Court of the First Judicial Circuit of the Republic of Panama are translated to the English language and attached as exhibits to the Status report filed on October 23, 2019.

It is important to note that not one of the AUSAs assigned to the above entitled criminal case had the initiative to contact the legal representatives of Owens to offer any type of assistance after the filing of the Status Report. It took an order of this Court to force the Government to respond to the Status Report filed days before the October 29, 2019 hearing.

The Government seeks to disallow Owens from submitting all pre-trial pleadings and motions under the Doctrine based on its accusation that Owens is a "fugitive from justice." Owens is not a fugitive and the Court should deny the

Government's request to sanction Owens under the Doctrine based on the arguments set forth below.

## III.  ARGUMENTS

### A. OWENS IS NOT A FUGITIVE FROM JUSTICE

To sanction Owens under the Doctrine, the Court must first determine if Owens is in fact a fugitive.  If the Court determines that Owens is not a fugitive, the Court's analysis need not continue as the Doctrine does not apply.

The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. (*Matter of Assarsson*, 687 F.2d 1157, 1161-62 [**12]  (8th Cir. 1982); (*United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1324 (9th Cir. 1978)). This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return. (*Jhirad v. Ferrandina*, 536 F.2d 478, 483-84 (2d Cir.), cert. denied, 429 U.S. 833, 50 L. Ed. 2d 98, 97 S. Ct. 97 (1976) (Jhirad II) (cited in *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984)).

The United States Court of Appeals for the Second Circuit provided an in-depth discussion and analysis of the Doctrine in *United States v. Technodyne LLC*, 753 F.3d 368 (2d Cir. 2014).  The *Technodyne* Court analyzed the term "fugitive" and identified the five prerequisites to declare an individual a fugitive:

> As we noted in <u>Collazos</u>, the statute identifies five prerequisites to a determination of fugitive: (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) <u>the claimant must not be confined or otherwise held in custody in another jurisdiction</u>; **and** (5) <u>the claimant must have deliberately avoided prosecution by</u> (A) purposefully leaving the United States, (B) <u>declining</u> to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.
> The claimant's intent may be assessed in light of "the totality of [the] circumstances.
>
> *(Id.* at 378, citing *Collazos v. United States*, 368 F.3d 190, 198 (2d Cir. 2004) (emphases added)).

Applying the test to the case at bar makes clear that the Government's labeling Owens a fugitive is mistaken. Owens has not intentionally avoided appearing in court in the United States, but rather, has requested the Panamanian court that he be allowed to appear in court in New York to defend himself against the U.S. charges.

Applying the five prerequisites to the case at bar, (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension – there may well be a warrant for Owens' arrest were he to enter the United States, but the Government has not taken an active role in working with the legal representative of Owens; (2) the claimant must have had notice or knowledge of the warrant – Owens is aware of the Indictment and is in communication with his US

defense counsel; (3) the criminal case must be related to the forfeiture action – this case not involve a forfeiture action, but Owens concedes that the Doctrine has been applied in pre-trial criminal actions in the District Courts of New York; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction – Owens is barred from leaving Panama without judicial approval; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant – Owens has never deliberately or purposefully avoided prosecution in the US but has requested the Panamanian court's permission to appear before this Court.

The fourth element of the five-pronged test makes clear that Owens is not and cannot be defined as a fugitive as he is in fact "confined or held in custody" in Panama. Owens is subjected to precautionary measures for the charges he faces in the Republic of Panama that restrict his liberty.  He is represented by counsel in the United States who has appeared on his behalf.  Owens, through his Panamanian counsel, requested the Panamanian court to allow him to travel to New York to appear at the October 29, 2019 hearing.  An opposition by the Panamanian prosecutor was filed on October 11, 2019.  As of the current date, Panamanian court has not ruled on Owens' request and it is clear the Panamanian court will not rule on Owens' request before the upcoming hearing.  Without the approval of the Panamanian court, Owens is unable to leave the country and appear in the United States. Although Owens is not

currently detained in a prison, he has been prohibited from exiting the territory of the Republic of Panama without judicial authorization and is obligated to reside in a specific place in the court's jurisdiction. If Owens were to leave Panama without the permission of the Panamanian court, he would be a fugitive from justice in his native country.

The fifth element of the five-pronged test requires a specific intent of the defendant to avoid prosecution which, according to *Technodyne*, "[W]here the government moves for disentitlement of a claimant, it bears the burden of establishing the factual prerequisites." (*Id.* at 380-81) (discussing the Government's burden of proving the defendant had specific intent to evade prosecution and determining that the defendant has no burden to "prove a negative.") Owens has no intention of avoiding prosecution in the United States, as demonstrated by his request to appear for the October 29, 2019 hearing. Although he has not appeared at any of the prior hearings, he was unable to do so because he was detained in Panama – at one point physically detained (incarcerated) and later with the restrictions placed on him by the Panamanian court.

### B. THE COURT SHOULD NOT APPLY THE FUGITIVE DISENTITLEMENT DOCTRINE TO OWENS

Many courts have expanded the Doctrine to apply to both civil and criminal matters. Indeed, applying the Doctrine against a defendant who is a fugitive from

justice after trial may be appropriate when the defendant seeks an appeal or other relief while refusing to subject himself to any negative consequences.

The United States District Court for the Southern District of New York broadened the scope of the Doctrine to apply to even pre-trial motions in a criminal case. (*United States v. Hayes*, 118 F. Supp. 3d 620 (S.D.N.Y. 2015)). In *Hayes*, the defendant Roger Darin was a Swiss citizen residing in Switzerland. Darin was charged in the US with conspiracy to commit wire fraud. Darin filed a motion to dismiss based on lack of nexus and notice. The Magistrate Judge determined that Darin was entitled to Fifth Amendment protection and declined to apply the fugitive disentitlement doctrine, but concluded that the motion to dismiss failed on the merits. Darin objected to the court's decision on the merits and the Government objected to the court's conclusion that the fugitive disentitlement doctrine did not apply. Upon reconsideration, the court determined that the Doctrine barred Darin's motion to dismiss (but again stated the motion would have failed on the merits). The *Hayes* Court determined that Darin was a fugitive because "he has avoided arrest by remaining in Switzerland" which does not extradite its citizens for financial crimes. (*Id.* at 625, 626).

The case at bar is easily distinguished from *Hayes*. Darin was free to leave Switzerland at any time to face the charges against him in Untied States and had openly stated "that he will not comply with any unfavorable result—while at the same time asking the court to rule in his favor." (*Id* at 627). As discussed in depth above, Owens cannot leave the Republic of Panama without express permission from the

12

court entertaining the criminal case in the Republic of Panama.

In assessing whether to apply to the Doctrine to Owens the Court must weigh the following factors:

> (1) whether a decision on the merits would be enforceable; (2) whether the defendant is flouting the judicial process; (3) whether a decision on the merits would encourage similar flights from justice; and (4) whether the defendant's evasion prejudices the Government.

*Hayes*, 118 F. Supp. 3d 620, 624 (S.D.N.Y. 2015).

Applying the four factors to the case at bar: (1) whether a decision on the merits would be enforceable – any pre-trial motions or pleadings would be enforceable in this case. Counsel cannot envision a pre-trial motion that the Court could not enforce. For example, if Owens were to submit a motion to suppress evidence, the Court, after reviewing the motion and any opposition by the Government, could either grant or deny the motion. If the Court were to grant the motion in whole or in part, the effect would be allowing or disallowing the evidence in question and the case would go forward. (2) Whether the defendant is flouting the judicial process – Owens has not "flouted" the judicial process. Owens has been represented by counsel at each hearing scheduled in his case. It is important to emphasis that Owens could not attend the hearings as result of the precautionary measures imposed on him by a Panamanian court, but he has made efforts to do so and has ensured that his interests were represented by counsel. Owens' willingness to attend his hearings are in sharp contrast to the cases in which the defendants have openly stated that they would not

attend without some "quid pro quo" for their attendance or guarantee of a favorable result.  (*United States v. Contents of Account Number 68108021 Held in the Name of Stella Collazos*, 228 F.Supp.2d 436, 438 (S.D.N.Y. 2002) ("Collazos would consider entering the United States and voluntarily submitting to the jurisdiction of the federal court in Florida so long as she was granted pre-trial release in exchange"); (*Hayes* at 627) (the defendant openly stated that he will not comply with any unfavorable result)).  (3) Whether a decision on the merits would encourage similar flights from justice – this factor does not apply as Owens did not flee or refuse to enter or reenter the United States. Owens has made every effort to be present and defend his interests.  (4) Whether the defendant's evasion prejudices the Government – motions or pleadings by Owens would not prejudice the Government.  Using the motion to suppress example, the Government would be able to oppose the motion to suppress (or any other motion) and the Court could either grant or deny the motion. Owens' physical presence in the courtroom would have no effect on the Court's decision, nor would his involuntary absence prejudice the Government.  In fact, the Government accepted any prejudices they might incur having filed an indictment against Owens, a person it knew was already detained and being prosecuted in the Republic of Panama because of the Panama Papers. In light of the facts stated above, the Court should not apply the fugitive disentitlement doctrine to Owens.

## C. THE COMMENTS MADE BY THE GOVERNMENT IN ITS MEMORANDUM ARE MISLEADING

The Government in its memorandum in response to the Owens' Status Report states: "the first time the Government learned of Owen's supposed attempt to attend the upcoming hearing was October 23, 2019, through his counsel's filing."

It is difficult to believe the previously mentioned statement made by the Government because the AUSAs assigned to this criminal matter are in constant communication with their counterparts in the Republic of Panama and are monitoring all the criminal cases in different jurisdictions relating to the Panama Papers. For example, the representatives of the Public Ministry of Panama have traveled to New York to meet with the Government and members of the Government have traveled to the Republic of Panama.

Furthermore, neither Owens nor his counsel have ever stated that he is unwilling to travel to New York and confront the charges against him. The undersigned counsel has met with the Government in the past to discuss the travel of Owens to the United States. Unfortunately, the conversations were one sided and in return for the assistance conditions that are unacceptable were attached. Therefore, the Government's statements are misleading.

## D. OWNES HAS THE INCENTIVE TO APPEAR AND CHALLENGE THE ALLEGATIONS

For extradition to be proper: (a) there must be a valid treaty and (b) the alleged criminal conduct must violate federal law and/or a preponderance of state law and

the criminal laws of a foreign country. (*United States v. Sai-Wah*, 270 F. Supp. 2d 748, 749 (W.D.N.C. 2003)). Traditionally extradition treaties contain a "dual criminality" requirement. Under the doctrine of "dual criminality," an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations. (*United States v. Khan*, No. 92-10165, 1993 U.S. App. LEXIS 10556, at *1 (9th Cir. Apr. 6, 1993)). In other words, the conduct charged in a criminal matter must be a crime under the law of the respective states (i.e. Panama and the United States in this case). (*In re Berrocal*, No. 17-22197-Civ-TORRES, 2017 U.S. Dist. LEXIS 140687, at *29-30 (S.D. Fla. Aug. 31, 2017)). No state shall use its processes to surrender a person for conduct which it does not characterize as criminal. (*Gallo-Chamorro v. United States*, 233 F.3d 1298, 1301 (11th Cir. 2000)). Dual criminality mandates that a prisoner be extradited only for conduct that constitutes a serious offense in both the requesting and surrendering country. (*Id.*)

In *United States v. Khan*, the defendant, Khan, argued that his United States extradition from Pakistan to face narcotics conspiracy charges violated the dual criminality requirement, specifically, Count VIII of the indictment alleged Khan's use of a telephone to facilitate the commission of the narcotics felony (21 U.S.C. § 843(b)) was not a crime in Pakistan. (*United States v. Khan*, No. 92-10165, 1993 U.S. App. LEXIS 10556, at *1 (9th Cir. Apr. 6, 1993)). The Court of Appeals for the Ninth Circuit held that the doctrine of dual criminality had not been satisfied with respect to Count VIII because, even though an exact Pakistani duplicate of 21 U.S.C. § 843

16

was not required, there was no Pakistani crime that was even slightly analogous to the United States offense. (*Id.*)

In retrospect, on January 31, 2019, the Republic of Panama enacted Law 70 of 2019, that establishes tax evasion as a criminal offense. It is important to note that the underlying crime for the charges depicted in the Indictment is tax evasion. In addition, the dates depicted in the Indictment of when the alleged criminal offenses were committed are before January 31, 2019. Moreover, it is not a crime in the Republic of Panama for an attorney to incorporate a corporation nor create a private foundation. [1] As per the facts present in this case, the doctrine of dual criminality is not satisfied because at the time the Indictment was filed with the Court the underlying conduct charged was not a crime in the Republic of Panama.

In the present case, Owens petition a Panamanian Court for permission to be present before this Court with his legal representatives to defend himself against the charges alleged in the Indictment. Unfortunately, the 18th Circuit Court of the First Judicial Circuit of Panama has not rendered a decision on Owens' petition to travel to New York to be before the Court. Owens reserves the right to argue the doctrine of dual criminality in the future. In sum, Owens has taken steps to be before this Court and confront the allegations that have been made by the Government.

---

[1] Law 32 of February 26, 1927-the Republic of Panama Corporation Law and Law 25 of June 12, 1995-Panama Foundation Law.

## IV. CONCLUSION

The primary purpose of the Doctrine is to prevent criminals who have escaped or evaded prosecution or imprisonment from reaping the benefits of the judicial system. Historically, the Doctrine was applied during the appeal process after the defendant has been afforded an opportunity to defend himself in a criminal case. The Doctrine "was developed as a rule of criminal appellate procedure when it was invoked to dismiss the appeal of a convicted criminal who escaped from jail during the pendency of his appeal." (*See* Chloe S. Booth, N*ote: Doctrine On The Run: The Deepening Circuit Split Concerning Application Of The Fugitive Disentitlement Doctrine To Foreign Nationals*, 59 B.C. L. Rev. 1153, 1158 (March 2018), (citing *Smith v. United States*, 94 U.S. 97, 97 (1876) (exercising the court's inherent authority to dismiss an appeal of a criminal who escaped from prison); (Gary P. Naftalis & Alan R. Friedman, *Fugitive Disentitlement in Civil Forfeiture Proceedings*, N.Y.L.J., Dec. 19, 2002, at 1 (explaining that the doctrine initially arose as a mechanism of judicial construction granting appellate courts the power to dismiss appeals of defendants who remained fugitives at the time of their appeal)). Indeed, a defendant should not be allowed an appeal when he deliberately refuses to submit himself to the possibility the appeal will fail and he or she must face punishment. The Doctrine should not be used as a means to disentitle a defendant of his pre-trial Constitutional rights, including the right to defend himself against prosecution. Therefore, Owens cannot be deemed a fugitive and the fugitive disentitlement cannot be applied to him because

his absence from the hearings were involuntary and he has taken steps to be before this Court.

For the foregoing reasons, the defendant, Ramses Owens, respectfully requests that the Court deny the request of the Government to apply the fugitive disentitlement doctrine against him and to provide him the opportunity to participate via his legal representatives in the upcoming hearing so he could be heard and defend his interests.  Owens does not waive any jurisdictional defenses he may elect to raise in his defense in the future.


Dated: November 4, 2019　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Charlie Carrillo
　　　　　　　　　　　　　　　　　　Charlie Ezra Carrillo
　　　　　　　　　　　　　　　　　　Counsel for Defendant –Ramses Owens
　　　　　　　　　　　　　　　　　　259 West Patrick Street
　　　　　　　　　　　　　　　　　　Frederick, Maryland 21701
　　　　　　　　　　　　　　　　　　Phone: (301) 378-8595
　　　　　　　　　　　　　　　　　　Fax: (301) 576-4453
　　　　　　　　　　　　　　　　　　E-mail: charlie@carrillobrux.com

## **CERTIFICATE OF FILING AND SERVICE**

I, Charlie Carrillo, hereby certify that on November 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

/s/ Charlie E. Carrillo

Charlie Ezra Carrillo
Counsel for Defendant – Ramses Owens
259 West Patrick Street
Frederick, Maryland 21701
Phone: (301) 378-8595
Fax: (301) 576-4453
E-mail: charlie@carrillobrux.com